**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Criminal No. 07-367 (JMR/SRN) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Brent Jarrod Lindo (01) and** **Chenelle Nicole Lindo (02),** | |
| **Defendants**. | |

Jeffrey Paulsen, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff United States of America

Caroline Durham, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, Minnesota 55415, for Defendant Brent Jarrod Lindo

Frederic Bruno, Bruno & Associates, 5500 Wayzata Boulevard, Suite 730, Minneapolis, Minnesota 55416, for Defendant Chenelle Nicole Lindo

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant Brent Lindo's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 34), Motion to Suppress Statements (Doc. No. 38), and Motion to Suppress Eyewitness Identifications (Doc. No. 39); and Defendant Chenelle Lindo's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 21), Motion to Suppress Statements (Doc. No. 23), and Motion to Suppress Identification Through Use of Photo Lineup (Doc. No. 45). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.[1]

_____

[1] The Court will address Defendants' non-dispositive motions in a separate Order.

I.       BACKGROUND

A Superseding Indictment was filed on October 10, 2007, jointly charging Defendant

Brent Lindo and Defendant Chenelle Lindo with conspiracy to distribute cocaine and crack

cocaine, possession with intent to distribute cocaine, and possession with intent to distribute

crack cocaine.  Each Defendant was also charged with being a felon in possession of a firearm.

This Court held a pretrial motions hearing on November 14, 2007.  Hennepin County Sheriff's

Detective Brady Sweitzer testified, and the Court received the following exhibits into evidence:

Gov't Ex. 1:   a search warrant, application, affidavit, receipt, inventory, and return for

the person of Chenelle Lindo or documents showing her residency at 808

Berry Street, Apartment #110, St. Paul, Minnesota;

Gov't Ex. 2:   a search warrant, application, affidavit, receipt, inventory, and return for

808 Berry Street, Apartment #110, St. Paul, Minnesota, and a 2007 black

Dodge Charger;

Gov't Ex. 3:   a search warrant, application, affidavit, receipt, inventory, and return for a

Buccal swab of the inner cheek of Brent Lindo;

Gov't Ex. 4:   a search warrant, application, affidavit, receipt, inventory, and return for a

Buccal swab of the inner cheek for a DNA sample of Chenelle Lindo;

Gov't Ex. 5:   a photographic lineup of six African-American males; and

Gov't Ex. 6:   a photographic lineup of six African-American females.

II.      FACTS

The following facts were elicited from the testimony and exhibits received at the pretrial

motions hearing.  On July 19, 2007, Detective Sweitzer jointly interviewed two confidential

informants.  The first informant, a female, has known Defendant Chenelle Lindo for about nine

months and bought narcotics from her two to three times a week.  The female informant has

known Defendant Brent Lindo for about the same length of time and also purchased narcotics

from him.  The second informant, a male, has purchased narcotics from Defendant Chenelle

Lindo for approximately six years.  There was a period of time during that six years when

Defendant Chenelle Lindo was incarcerated, and the male informant bought drugs from

Defendant Brent Lindo during that time.

About thirty minutes into the interview, Detective Sweitzer showed the informants two

photographic lineups: one of African-American females, which included Defendant Chenelle

Lindo; and one of African-American males, which included Defendant Brent Lindo.  Detective

Sweitzer had assembled the photographic spreads with the aid of a computer program.  Together,

the informants identified the photographs of Defendants as the people from whom they had

purchased narcotics.

## III.   DISCUSSION

### A.   The Motions to Suppress Statements

At the pretrial motions hearing, no evidence was presented regarding any statements by

either Defendant Brent Lindo or Defendant Chenelle Lindo.  Defendant Chenelle Lindo

withdrew her motion to suppress statements, but Defendant Brent Lindo asked the Court to

permit his motion to remain pending until he could review certain taped statements.

The Court cannot allow a suppression motion to remain pending indefinitely.  Defendant

Brent Lindo presumably has had an opportunity to review the taped statements, and he did not

advise the Court in his post-hearing memorandum of any actual suppression issues.

Accordingly, the Court recommends that Defendant Brent Lindo's motion to suppress statements be denied.

### B.     The Motions to Suppress Identifications

At the pretrial motions hearing, the Government stated that it will not introduce evidence related to photographic lineups at trial.  Instead, the Government intends to call the informants as witnesses to give direct testimony about their dealings with Defendants and to make courtroom identifications.  According to the Government, Defendants' motions to suppress the identifications are therefore moot.  The Court agrees, but given that Defendants expressly declined to withdraw their motions at the motions hearing, the Court must briefly discuss why the identifications would be admissible.  At Defendants' request, the Government submitted the videotaped interview and identifications for an in camera review, and the Court has viewed the material.

In assessing the constitutionality of a photographic lineup, a court must first determine whether the identification procedure was "impermissibly suggestive" and, if it was, then inquire whether that procedure was nonetheless reliable.  United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003) (internal citations omitted).  Here, neither the photographic lineups nor the identification procedure were suggestive in any way.  Each lineup consisted of six photographs of individuals with similar features.  There were no markings or writing on the lineups. Detective Sweitzer asked the informants to identify the people from whom they had purchased narcotics and about whom they had talked for the past thirty minutes.  Detective Sweitzer did not prompt the informants or suggest a result.

Even assuming the identification procedure was impermissibly suggestive, the

identifications were nevertheless reliable.  In assessing reliability, courts balance five factors:

"'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree

of attention, the accuracy of his prior description of the criminal, the level of certainty

demonstrated at the confrontation, and the time between the crime and the confrontation.'"  Id.

(internal citation omitted).  In this case, both informants had personally engaged in numerous

drug deals with each Defendant.  There is no reason to question their degree of attention or doubt

the accuracy of any prior descriptions.  The informants said they were absolutely sure of their

identifications, and there was only a short period of time between the drug transactions and the

identifications.  Accordingly, Defendants' motions to suppress the identifications should be

denied.

### C.      The Motions to Suppress Evidence Obtained from Search and Seizure

The Government submitted four search warrants for the Court's review.  Defendants

concede that the validity of the latter three warrants depends on the validity of the first warrant.

The Court will therefore begin with the search warrant for the person of Chenelle Lindo or

documents showing her residency at 808 Berry Street, Apartment #110, in St. Paul, Minnesota

("Apartment #110").  (Gov't Ex. 1.)

On July 19, 2007, Detective Sweitzer applied for a search warrant to be executed at

Apartment #110.  The purpose of the warrant was to search for the person of Defendant Chenelle

Lindo or documents, receipts, letters, bills, or identification showing her residency at Apartment

#110.  Detective Sweitzer submitted an affidavit in support of the warrant application, in which

he averred the following information.  In 2007, a confidential reliable informant (CRI) told

Detective Sweitzer that Defendant Chenelle Lindo was distributing large amounts of crack

cocaine.  The CRI reported seeing multiple ounces of crack cocaine and weapons with Defendant

Chenelle Lindo.  The CRI also told Detective Sweitzer that the CRI had personally observed

Defendant Chenelle Lindo in possession of crack cocaine and saw her sell the drugs for money,

once within the past thirty days, and a second time within the past two weeks.  The CRI

positively identified Defendant Chenelle Lindo from a photograph.  Detective Sweitzer noted

that the CRI had given information about narcotics dealers to law enforcement in the past, which

was independently corroborated by officers, and which eventually led to the seizure of narcotics

and the arrests and convictions of narcotics dealers.  Based on the information from the CRI,

Detective Sweitzer began investigating Defendant Chenelle Lindo.  He learned that she had been

evicted from her previous known residence in St. Louis Park, Minnesota, and that her current

telephone number registered to Apartment #110.  Detective Sweitzer discovered that Apartment

#110 was actually leased in the name of Patricia Ann Pruitt.  Further investigation revealed that

Patricia Ann Pruitt and Defendant Chenelle Lindo were listed as co-owners of a 2007 black

Dodge Charger, and that the Charger was parked at a curb on Berry Street near the entrance to

Apartment #110.  From his experience, Detective Sweitzer knew that people involved in the

distribution of narcotics often use other people's names and addresses to avoid being

apprehended.

Based on Detective Sweitzer's affidavit, a Ramsey County District Court judge issued a

search warrant on July 19, 2007, for "[t]he person of Chenelle Nicole Lindo . . . .  Documents,

receipts, letters, bills and identification to show residency at 808 Berry Street, Apartment #110 in

St. Paul."  (Gov't Ex. 1.)  The search warrant was executed the same day.  Detective Sweitzer

did not seize any items as a result of the warrant but left a copy of the warrant at the residence.

1.      **Standing**

Defendant Chenelle Lindo chose not file a post-hearing memorandum on the validity of

the search warrant, submitting the matter to the Court on the basis of her three-sentence, original

motion, which contained no facts, law, or argument.  Only Defendant Brent Lindo has provided

legal argument to the Court, but he has made no showing of standing to contest the warrant.  A

defendant has standing to challenge the admission of illegally obtained evidence only if his or

her own constitutional rights were violated.  See Rakas v. Illinois, 439 U.S. 128, 134 (1978).

The Fourth Amendment is not offended if a person "is aggrieved by an illegal search and seizure

only through the introduction of damaging evidence secured by a search of a third person's

premises or property . . . ."  Id.  In Fourth Amendment challenges, whether a defendant has

standing to challenge a search depends on whether he had a subjective and reasonable

expectation of privacy in the area searched or the items seized.  See Minnesota v. Carter, 525

U.S. 83, 91 (1998).  The person challenging the search bears the burden of establishing a

subjective expectation of privacy and that the expectation is objectively reasonable, meaning one

that society is willing to expect.  See Minnesota v. Olson, 495 US. 91, 96-97 (1990).

In the present case, Defendant Brent Lindo has failed to show a subjective expectation of

privacy in Apartment #110.[2]  Thus, he has no standing to contest the validity of the warrant or

the officers' presence there, and his motion to suppress evidence should be denied on this basis.

2.      **Probable Cause**

Defendant Brent Lindo argues that no probable cause existed for the warrant because it

---

[2] Defendant Chenelle Lindo also failed to affirmatively demonstrate a subjective
expectation of privacy in Apartment #110, but the Court has ascertained from the Government's
exhibits that she likely has a valid expectation.

did not seek items that were contraband or direct evidence of a crime.  Rather, the purpose of the

warrant was to search for proof that Defendant Chenelle Lindo lived at Apartment #110, and

Defendant Brent Lindo argues that mere proof of residency falls outside the scope of probable

cause.  The Government did not address this issue in its response.

When a court reviews a search warrant for the existence of probable cause, "only that

information which is found within the four corners of the affidavit may be considered in

determining the existence of probable cause."  United States v. Leichtling, 684 F.2d 553, 555

(8th Cir. 1982).  "Probable cause exists if, based upon a common-sense consideration of all the

circumstances set forth in the supporting affidavit, 'there is a fair probability that contraband or

evidence of a crime will be found in a particular place.'"  United States v. Curry, 911 F.2d 72, 75

(8th Cir. 1990) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  "The critical element in a

reasonable search is not that the owner of the property is suspected of crime but that there is

reasonable cause to believe that the specific 'things' to be searched for and seized are located on

the property to which entry is sought."  Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978).  A

court "may properly rely on normal inferences drawn by the surrounding circumstances and the

allegations of facts contained in the affidavit."  United States v. Carlson, 697 F.2d 231, 238 (8th

Cir. 1983).

> As stated by the United States Supreme Court,
>
> it is reasonable, within the terms of the Fourth Amendment, to conduct otherwise
> permissible searches for the purpose of obtaining evidence which would aid in
> apprehending and convicting criminals. The requirements of the Fourth
> Amendment can secure the same protection of privacy whether the search is for
> 'mere evidence' or for fruits, instrumentalities or contraband. There must, of
> course, be a nexus—automatically provided in the case of fruits, instrumentalities
> or contraband—between the item to be seized and criminal behavior. Thus in the
> case of 'mere evidence,' probable cause must be examined in terms of cause to

> believe that the evidence sought will aid in a particular apprehension or conviction.

Warden v. Hayden, 387 U.S. 294, 306-07 (1967).  As the Supreme Court later explained, the holding in Hayden "that the Fourth Amendment did not prohibit the seizure of 'mere evidence' marked an important expansion of governmental power."  United States v. 92 Buena Vista Ave., 507 U.S. 111, 121 (1993).

In United States v. Apker, the defendants were charged with conspiring to distribute methamphetamine.  705 F.2d 293, 296 (8th Cir. 1983), abrogated on other grounds, Maryland v. Macon, 472 U.S. 463, 470 (1985).  The police later obtained search warrants, the objects of which were not contraband but indicia that the defendants belonged to Hells Angels, a legal organization.  Id.  The defendants argued that there was no nexus between their membership in a legal organization and the charged offenses.  Id. at 298.  The Eighth Circuit disagreed, remarking "[t]he rule is well settled that police searches are not limited to instrumentalities or fruits of crime or contraband.  Police can search for 'mere evidence' of crime if there is a nexus between the item to be seized and criminal behavior."  Id.  In Apker, it was a sufficient nexus that "[p]roof of membership would help show [the defendants'] associations with each other and their opportunity to use the Hells Angels organization for illegal activities."  Id.

In the present case, the search warrant authorized law enforcement officers to search Apartment #110 for the person of Defendant Chenelle Lindo and for documents, receipts, letters, bills, or identification tending to show her residency at that address.  Detective Sweitzer was investigating Defendant Chenelle Lindo for dealing narcotics, and he averred in his affidavit that she had engaged in at least two, recent drug transactions.  This information was sufficient to establish probable cause to believe that Defendant Chenelle Lindo was selling narcotics.

Although most of Detective Sweitzer's information about the suspected drug dealing came from the CRI, the CRI had no knowledge connecting Defendant Chenelle Lindo to a residence. Detective Sweitzer obviously wanted to know where Defendant Chenelle Lindo lived, given that drug dealers often keep evidence of their narcotics trafficking in their homes, so the detective investigated further and discovered that Defendant Chenelle Lindo's telephone number registered to Apartment #110. Detective Sweitzer later learned, however, that the name on the lease for Apartment #110 was Patricia Ann Pruitt. As Detective Sweitzer noted in his affidavit, drug dealers often use other people's names and addresses in order to avoid apprehension. A reasonable inference from this averment is that Detective Sweitzer thought Defendant Chenelle Lindo was using the name Patricia Ann Pruitt and/or Ms. Pruitt's address in order to avoid apprehension. Based on this inference, the registered telephone number, and the fact that a car registered to Defendant Chenelle Lindo was parked outside of Apartment #110, probable cause existed to believe that Defendant Chenelle Lindo herself or documents showing that she lived at Apartment #110 would be found at that address.

It is true that Defendant Chenelle Lindo's presence or documents reflecting that she lived at Apartment #110 would not be direct evidence of narcotics dealing. However, as Hayden and its progeny instruct, a warrant may issue for simply "mere evidence." The objects of the search warrant in this case were mere evidence, but evidence which would establish a connection between Defendant Chenelle Lindo and Apartment #110. Once Detective Sweitzer knew where Defendant Chenelle Lindo lived, he could then seek a search warrant for her residence, which, in fact, he did. A search of Defendant Chenelle Lindo's residence could, in turn, provide evidence to aid Detective Sweitzer in apprehending her for narcotics dealing, considering that drug dealers

often keep evidence of their crimes in their homes. Thus, there was "cause to believe" that the presence of Defendant Chenelle Lindo or documents showing that she lived at Apartment #110 would aid law enforcement officers in apprehending her for narcotics dealing. See Hayden, 387 U.S. at 307.

Even if police lacked probable cause to search Apartment #110 for documents relating to Defendant Chenelle Lindo's residency there, probable cause existed to search that location for the person of Defendant Chenelle Lindo. "A court can sever deficient portions of a search warrant without invalidating the entire warrant." United States v. Pitts, 173 F.3d 677, 681 (8th Cir. 1999) (citing United States v. Fitzgerald, 724 F.2d 633, 637 (8th Cir. 1983) (en banc)). Based on the information from the CRI and Detective Sweitzer's independent investigation, there was probable cause to believe that Defendant Chenelle Lindo had sold narcotics and that she could be found at Apartment #110. Thus, the portion of the search warrant authorizing a search for her person at Apartment #110 was valid.

In conclusion, probable cause existed for the issuance of the search warrant for the person of Defendant Chenelle Lindo or documents tending to show her residency at Apartment #110. Accordingly, both Defendants' motions to suppress evidence seized pursuant to this warrant should be denied.

### 3.     The Good Faith Exception

Even if the search warrant was not supported by probable cause, the Court finds that the officers who executed the warrant relied in good faith on the existence of a valid warrant. Under the good-faith exception to the exclusionary rule, "evidence seized pursuant to a search warrant . . . that is later determined to be invalid, will not be suppressed if the executing officer's

11

reliance upon the warrant was objectively reasonable." United States v. Proell, 485 F.3d 427,

430 (8th Cir. 2007). Defendant Brent Lindo argues that Detective Sweitzer's affidavit was "so

lacking in indicia of probable cause as to render official belief in its existence entirely

unreasonable." See United States v. Leon, 468 U.S. 897, 923 (1984) (quotation omitted). In

particular, Defendant Brent Lindo contends that the affidavit did not set forth a nexus between

Apartment #110 and contraband or evidence of a crime.

When an affidavit fails to establish a nexus between a residence and contraband, it still

would not be "entirely unreasonable" for the executing officer "to believe that such an inference

was permissible." United States v. Carpenter, 341 F.3d 666, 671 (8th Cir. 2003). Here, the

executing officers knew that Defendant Chenelle Lindo was being investigated for suspected

narcotics dealing and that she had engaged in at least two transactions with a CRI. In addition,

the officers believed that Defendant Chenelle Lindo resided at Apartment #110 because her

telephone number was registered to that address and her car was parked outside. It was

reasonable for the officers to infer that Defendant Chenelle Lindo kept evidence related to her

suspected narcotics dealing in her home, and it was also reasonable to infer that her presence or

documents showing that she lived at Apartment #110 could establish that she lived there.

Courts must apply the good faith exception "when an officer acting with objective good

faith has obtained a search warrant from a judge or magistrate and acted within its scope." Leon,

468 U.S. at 920. In the case at hand, the executing officers acted within the warrant's scope;

indeed, they seized nothing from Apartment #110. Ordinarily, "an officer cannot be expected to

question the magistrate's probable-cause determination or his judgment that the form of the

warrant is technically sufficient. . . . Penalizing the officer for the magistrate's error, rather than

his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Id. at

921. Here, if there was any error in the issuance of the warrant, the executing officers should not

be penalized because it was not entirely unreasonable for them to rely on the issuing judge's

"willingness to infer the requisite nexus." See Carpenter, 341 F.3d at 672 n.3.

### 4.    The Subsequent Three Warrants

Because the first search warrant executed at Apartment #110 was valid, the successive

warrants were not fruits of a poisonous tree. Defendants have offered no other basis to suppress

the evidence seized pursuant to these warrants. Upon independent review of the warrants, the

Court finds they were supported by probable cause. Accordingly, Defendants' motions to

suppress evidence seized pursuant to the subsequent search warrants should be denied.


Based on all of the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that:

1.    Defendant Brent Lindo's Motion to Suppress Evidence Obtained as a Result of

        Search and Seizure (Doc. No. 34) be **DENIED**;

2.    Defendant Brent Lindo's Motion to Suppress Statements (Doc. No. 38) be

        **DENIED**;

3.    Defendant Brent Lindo's Motion to Suppress Eyewitness Identifications (Doc.

        No. 39) be **DENIED**;

4.    Defendant Chenelle Lindo's Motion to Suppress Evidence Obtained as a Result of

        Search and Seizure (Doc. No. 21) be **DENIED**;

5.    Defendant Chenelle Lindo's Motion to Suppress Statements (Doc. No. 23) was

**WITHDRAWN**; and

6.      Defendant Chenelle Lindo's Motion to Suppress Identification Through Use of

Photo Lineup (Doc. No. 45) be **DENIED**.


Dated: December 12, 2007

                                        s/ Susan Richard Nelson
                                        SUSAN RICHARD NELSON
                                        United States Magistrate Judge


Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by December 27, 2007, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.